IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

FRANK GAURA,

                 Plaintiff,                 OPINION AND ORDER

   v.

                                    20-cv-259-wmc

ANDERSON, O'BRIEN, BERTZ,
SKRENES & GOLLA, LLP,

                 Defendant.

*Pro se* plaintiff Frank Gaura has filed this lawsuit against defendant Anderson, O'Brien, Bertz, Skrenes & Golla, LLP (Anderson O'Brien), under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§2000e, *et seq.* Plaintiff claims that his former employer, Anderson O'Brien, discriminated against him, retaliated against him, and subjected him to a hostile work environment, all on the basis of his national origin. This order resolves four pending discovery-related motions. I am denying plaintiff's motion for a protective order (dkt. 10) and related motion to stay depositions and to quash (dkt. 30); granting defendant's motion for a protective order (dkt. 14); and denying in part and reserving in part plaintiff's motion to compel production of documents identified in defendant's privilege log (dkt. 21). As explained below, to address plaintiff's challenge to certain documents listed in defendant's privilege log, I will review those communications *in camera*.

OPINION

I.      **Plaintiff's motion for protective order (dkt. 10)**

      Plaintiff seeks a protective order to avoid producing certain communications in response to defendant's Requests for Production (RFPs) 1 and 2. In RFP 1, defendant originally sought

"All communications between you and any employee or partner of the Anderson O'Brien law firm for the period November 20, 2019, to the present." In RFP 2, defendant originally sought "All communications between you and Sandra Zenor for the period November 20, 2019, to the present." After plaintiff objected to the requests, defendant modified both RFPs to include the language "relating, in any way, to any claim you are making in this lawsuit, including any relief in this lawsuit." (Pl. Aff. (dkt. 11) ¶ 10; Pl. Ex. 5 (dkt. 10-5).) Plaintiff continues to object to both requests, but he has not shown that he is entitled to a protective order with respect to either.

In opposition to RFP 1, plaintiff explains that after his termination from Anderson O'Brien, he communicated with certain employees. He is concerned that if he turns over those communications, then Anderson O'Brien will retaliate against them for disparaging the firm or speaking out in support of plaintiff. Plaintiff understands that he is obliged to produce these communications but request a protective order or for an *in camera* review of the responsive documents. Plaintiff provides an example of a former co-worker -- Mrs. Jennifer Lemke -- who was terminated about four months after he was terminated; he claims that the reason she was terminated was because she had supported plaintiff. Plaintiff's evidence in support of his suspicions is his own affidavit (dkt. 11), and a November 5, 2019, email in which defendant's director of operations suggested that the firm was aware that Lemke and plaintiff were speaking about plaintiff's potential claims in this lawsuit (dkt. 10-9).

In opposition, defendant explains that after his termination, plaintiff sent out a communication to Anderson O'Brien employees, informing them that they need to be available for trial. Therefore, they have reason to believe that plaintiff received responses that may provide relevant information and potential witnesses. Defendant further contends that

2

plaintiff's claimed need to protect fellow employees from retaliation is not only speculative, it is inappropriate attempt to publicly disparage the firm. Defendant is willing to provide documentation related to Lemke's termination if the court wants to see it.

I do not need to review Lemke's personnel records to resolve this dispute. Plaintiff's arguments are speculative. He has not provided a legitimate reason why he should not have to produce the responsive communications, nor has he provided a basis to grant a protective order limiting the information that he would need to produce. Therefore, I am denying plaintiff's request for a protective order with respect to RFP 1, and I am denying as moot plaintiff's motion to stay depositions and to quash the subpoena of Lemke.

As for RFP 2, plaintiff claims that his communications with Attorney Zenor are either privileged or unrelated and therefore irrelevant to this lawsuit. Plaintiff explains that Attorney Zenor serves as his family's attorney and is a friend, as well as his former employer. Plaintiff represents that after his November 20, 2019 termination, he communicated with Zenor for the purpose of obtaining legal advice and represents that there was a phone call between Zenor and a partner at Anderson O'Brien related to his termination. (Pl. Aff. (dkt. 11) ¶ 22.) Plaintiff further explains that while he worked as Zenor's paralegal, he worked on cases in which one of Anderson O'Brien's co-managing partners, Nadine Davy, was counsel for the opposing parties. Plaintiff represents that after he was terminated from Anderson O'Brien, he assisted Zenor while he was looking for work, and he continues to communicate with her about clients and cases.

In opposition, defendant does not suggest that plaintiff must produce communications between him and Zenor related to the cases on which he worked for her. Such documents would not relate to this lawsuit, so they would not be responsive to defendant's narrowed RFP.

3

Instead, defendant contends that plaintiff's communications with Zenor are relevant and are not privileged. Defendant explains that plaintiff previously identified Zenor as someone with knowledge and information related to his claim for damages, including plaintiff's claims of emotional distress damages. Further, defendant argues that if plaintiff were working for Zenor after his termination, then Zenor would be in possession of information related to plaintiff's duty to mitigate his damages. To challenge plaintiff's privilege assertion, defendant points out that: (1) Zenor is not representing plaintiff in this matter, (2) plaintiff has not attested that he retained Zenor to represent him in his employment dispute with Anderson O'Brien; and (3) the Anderson O'Brien attorney Zenor called after plaintiff's termination would testify that at the beginning of their phone call, Zenor explicitly stated that she was not calling as plaintiff's attorney and that she did not represent him. Finally, defendant reports that even though plaintiff was reminded of his obligation to provide a privilege log outlining the documents he is withholding on the ground of privilege, plaintiff has refused to do so.

Defendant's view that plaintiff's communications with Zenor are not privileged because Zenor does not represent him and never intended to represent him does not completely dispose of the question of privilege. *Cf. United States v. Keplinger*, 776 F.2d 678, 701 (7th Cir. 1985) (absent a relatively clear indication by the potential client to the attorney that he believed he was being represented, no attorney-client relationship can be inferred without some finding that the potential client's subjective belief is minimally reasonable). That said, even if this court is willing to assume, *arguendo*, that plaintiff's subjective believe in this regard is minimally reasonable, it remains plaintiff's burden to establish that any of his communications with Zenor actually were privileged. Plaintiff has not met this burden.

The attorney-client privilege is narrow:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir. 1997) (quoting 8 John Henry Wigmore, *Evidence in Trials at Common Law* § 2292 (1961)). "The party seeking to invoke the privilege bears the burden of proving all of its essential elements," *id.,* and "each of these elements must be established as to each document, as the mere existence of an attorney-client relationship is not sufficient to cloak all communications with the privilege." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 145 F.R.D. 84, 86 (N.D.Ill.1992). "Privilege must be made and sustained on a document-by-document basis. A blanket claim of privilege that does not specify what information is protected will not suffice." *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992) (citation omitted).

By plaintiff's own account, many of his communications with Zenor relate to their personal or employer/employee relationship. No documents of this nature would be privileged. It was plaintiff's obligation to specify which communications he claims fit the narrow definition of privilege quoted above. Plaintiff has not even attempted to make this showing, notwithstanding defendant's entirely proper request for a privilege log. The time to do so has passed. I am denying plaintiff's request for a protective order with respect to RFP 2 as well. Not later than December 24, 2020, plaintiff must produce any communications between him and Zenor from November 20, 2019, to the present, that relate to his claims in this lawsuit, including all communications with Zenor related to plaintiff's damages, mitigation and back pay.

## II.     Defendant's motion for protective order (dkt. 14)

Pursuant to Federal Rule of Civil Procedure 26(c)(1)(G), defendant seeks a protective order related to two documents containing confidential information, as well as a standard protective order to protect subsequently produced confidential information, including personnel records and plaintiff's medical/psychological records.  Plaintiff refused to agree to defendant's proposed protective order.

The first document is a listing of time entries made by plaintiff in cases he worked on as a paralegal at Anderson O'Brien.  Defendant argues that the time entries are relevant because plaintiff claims he was treated differently than similarly-situated non-Czech employees with respect to time recording.  Defendant seeks a protective order with respect to this document because it includes the identity of clients, tasks being performed during litigation and time spent performing tasks, all of which is confidential and should not be shared beyond this lawsuit.  Defendant also indicates that the time record of a similarly-situated employee will also be admitted at some point in this lawsuit as a comparator.  As such, defendant is willing to produce the plaintiff's time records unredacted, but defendant wants a protective order.

Defendant's concerns about the privacy of its clients is well-taken.  *See, e.g., Isaacson v. Keck, Mahin & Cate*, No. 92-C-3105, 1992 WL 297391, at *1 (N.D. Ill. Oct. 8, 1992) (parties may file under seal all documents relating to or involving confidential client information, since "special care should be taken where attorney/client confidences are implicated").  Furthermore, defendant clarifies that the request for a protective order is for pretrial proceedings only.  If either party files any confidential documents under seal, then they must submit a redacted version for public access; at that point, if the opposing party believes the document should be made public, then they can flag the dispute for the court at that time.  This is standard

operating procedure in this situation, and I can see no reason not to employ it here. Accordingly, I will enter a protective order with respect to this document.

Defendant also wants to protect the confidentiality of Anderson O'Brien's liability insurance policy. Defendant is willing to produce an unredacted copy to plaintiff, but only pursuant to a protective order. Defendant reports that although most of the policy is boilerplate, it contains figures related to Anderson O'Brien's accounts receivable, the value of business property, and coverage amounts, all of which defendant wishes to keep confidential. In short, this information is not generally available to the public and Anderson O'Brien deems it confidential proprietary information.

Plaintiff objects to protecting the confidentiality of this information, but he does not provide any legitimate reason why such information would be of the public interest. Plaintiff takes issue with the fact that defendant has modified its position with respect to producing these documents, suggesting that defendant has not been forthcoming with the court. That's a canard: civil discovery is a dynamic, flexible process that requires parties constantly to modify their positions. Plaintiff also provides case law discussing the presumption that all matters *filed* with the court are "open to public view . . . unless a statute, rule, or privilege justified confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). Plaintiff's recitation of the law is correct but irrelevant: this is a dispute over pretrial discovery, which is *not* filed with the court. *See, e.g., Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984); *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) ("Generally speaking, the public has not constitutional, statutory (rule-based) or common-law right of access to *unfiled* discovery," emphasis in original). I will grant defendant's request to keep its insurance policy confidential.

7

Finally, defendant asks the court to enter a general protective order that would require the parties to keep confidential other types of information. A few examples defendant includes are personnel records of other similarly situated employees and plaintiff's medical and mental health records. Defense counsel represents that he proposed to plaintiff the standard protective order used by the Eastern District of Wisconsin, that would omit the "attorney's eyes only" requirement. (*See* Modl Decl., Ex. 4 (dkt. 16-4) 4.) However, plaintiff refused. Again, plaintiff does not provide any specific argument opposing a broader protective order for personnel records. Once again, it is standard operating procedure in this court to enter protective orders that maintain the confidentiality of personnel records, medical records and the like. There is a potential for harm if these additional categories of documents are publicly available. Here, I will not enter a broad-based protective order but I will proactively order the parties to keep confidential all documents that relate to (1) personnel records of plaintiff or other Anderson O'Brien employees and (2) plaintiff's medical and mental health records.

### III.   Plaintiff's motion to compel (dkt. 21)

Finally, plaintiff filed a motion to compel production of certain documents listed in defendant's privilege log. Plaintiff's motion challenges the privilege assertion for three categories of documents listed in the privilege log: (a) internal communications between defendant's labor and employment attorney about plaintiff's lawsuit, (b) communications between defendant and its outside counsel related to this lawsuit, and (c) defendant's management meeting minutes. Defendant opposes the motion and asks for fees, but also says it is willing to produce any contested documents for *in camera* review and indicates it has also updated its privilege log (*see* dkt. 28-1). In reply, plaintiff points out that defendant's amended

privilege log added a column for the "subject" of the communication, which he had been requesting since June. Plaintiff further urges my *in camera* review of the documents because the privilege log leaves questions about whether certain communications require production.

Let's start by identifying the individuals and entities involved in the challenged communications: Attorney Nadine Davy and Attorney Rick Flugaur are Anderson O'Brien's co-managing partners, and they manage all aspects of the law firm. Kristi Waits was Anderson O'Brien's Director of Operations and Firm Administrator. In that role, Ms. Waits was involved in managing Anderson' O'Brien's office. Davy, Flugaur, and Waits formed Anderson O'Brien's management and operations team, and they have been the primary contact with outside defense counsel.

Attorney Brian Formella is a partner at Anderson O'Brien. Formella practices labor and employment law, and he frequently provides legal counsel to Anderson O'Brien's management and operations team for matters involving internal labor and employment issues. That includes plaintiff's employment.

Sentry Insurance (Sentry) is Anderson O'Brien's liability insurance carrier. Alysha Fuss is an account manager at Sentry, and defendant's understanding is that she is responsible for managing Anderson O'Brien's account. Taylor Haines is a claims representative at Sentry Insurance. She is responsible for handling plaintiff's claim against defendant.

Anderson O'Brien provided Sentry notice of plaintiff's claim. Thereafter Sentry retained Axley Brynelson, LLP to defend Anderson O'Brien against plaintiff's claim. Attorney Troy Thompson is one of the attorneys representing Anderson O'Brien in this matter, and Emmi Schreiner is Thompson's former legal assistant.

### A. Internal attorney communications

As already noted, to determine whether a communication is protected by the attorney-client privilege, the court considers "(1) whether legal advice of any kind was sought from a professional legal adviser in his capacity as such; and (2) whether the communication was related to that purpose and made in confidence by the client." *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (internal quotations and alterations omitted). When the client is a business entity like defendant, the inquiry acknowledges that employees beyond the officers and agents directly responsible for the company's actions in response to legal advice might possess information needed by the corporation's lawyers to provide legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 397 (1981). Specifically, the court must consider whether the communications related to matters within the scope of the employee's corporate duties, and whether the employee was aware that the communication would be used for the purpose of his or her employee obtaining legal advice. *Id.* at 394.

Plaintiff challenges the following six communications involving Attorney Formella:

(1) A November 4, 2019, email from Formella to Davy, in which Formella provided Davy legal advice regarding plaintiff's employment issues.

(2) A November 4, 2019, email from Formella to Davy in which Formella provided legal advice regarding plaintiff's request to work part-time.

(3) A November 4, 2019, email from Waits to Formella in which Waits provided Formella information he requested related to plaintiff's part-time work request.

(4) A November 20, 2019, email from Formella to Davy and Waits in which Formella provided legal advice regarding a potential employment action against plaintiff.

(5) A December 11, 2019, email from Formella to Flugaur and Davy, in which Formella provided legal advice regarding instituting a litigation hold, investigating various hard drives and flash drives, and securing various emails.

(6) A November 4, 2019, email from Formella to Waits in which Formella provided legal advice regarding the Delta Management debt collection issue involving plaintiff.

Defendant's position is that each of the six emails was a communication related to the legal advice that Formella was providing to Anderson O'Brien, in Formella's capacity as a licensed attorney, about internal labor and employment matters.  Indeed, five of the communications were emails written by Formella to one of the members of defendant's management and operations team (Davy and Waits), or to a co-managing partner of the defendant (Flugaur).  Defendant represents that all of the communications related to legal advice that Formella provided related to the terms of plaintiff's employment, the Delta Management debt issue involving plaintiff, and then how Anderson O'Brien should implement a litigation hold related to the claim that plaintiff brought against it.  In this sixth communication, Wait provided Formella information pertinent to the legal advice that Formella was providing defendant, at Formella's request.

Plaintiff first suggests that the timing of these communications -- occurring before his termination and commencement of this lawsuit -- render them unprivileged.  Plaintiff might

11

have the attorney work product privilege in mind; no such limitation applies to the attorney-client privilege. *Sandra*, 600 F.3d at 621 ("Of course, the attorney-client privilege protects not only the attorney-client relationship in imminent or ongoing litigation but also the broader attorney-client relationship outside the litigation context."). Plaintiff speculates that Formella might not have been providing legal advice to Anderson O'Brien within all these communications. After all, explains plaintiff, Formella also witnessed events related to his termination: he presided over a termination meeting on November 20, 2019, and signed plaintiff's termination letter. Therefore, suggests plaintiff, Formella could have been providing business advice to the firm, not legal advice. He points to the Seventh Circuit's statement that questions of privilege when a lawyer is involved in both business and legal matters at the same time are "especially difficult." *American Nat'l Bank & Trust Co. v. Equitable Life Assurance Soc'y of the United States*, 406 F.3d 867, 878-79 (7th Cir. 2005). For that reason, he asks that I conduct an *in camera* review of these documents to determine whether those documents are privileged. I am skeptical, but nonetheless I will order defendant to produce these six communications for in camera review.

### B. Communications with outside counsel

Plaintiff challenges the following four entries on the privilege log describing communications between employees of defendant, Sentry, and Axley Brynelson:

>(1) A December 12, 2019, email from Davy to Fuss, regarding plaintiff filing a discrimination charge with the EEOC.

> (2) A January 30, 2020, email from Schreiner to Davy and Haines, copying Thompson, regarding an error in a previous communication between Axley Brynelson, Anderson O'Brien, and Sentry.
>
> (3) A February 2, 2020, email from Haines to Schreiner and Davy, copying Thompson, regarding a potential settlement with plaintiff.
>
> (4) A January 30, 2020, email from Waits to Davy, regarding a communication from Thompson.

Defendant's position is that these four communications are protected by either the attorney-client privilege, the work-produce doctrine, or both.

As to the December 12, 2019, email, the communication between Davy and Fuss may not have occurred for the purpose of obtaining legal advice, but defendant points out that Davy identified information and documents that attorneys at Anderson O'Brien had prepared in anticipation of litigation. Defendant's position is that this qualifies as work product. The work product doctrine serves "(1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterpart." *Sandra T.E.*, 600 F.3d at 621-22. It "applies to attorney-led investigations when the documents at issue 'can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Id.* at 622 (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996)).

Plaintiff argues that Davy's email was merely providing Sentry the factual background necessary to give adequate notice of a claim. Therefore, Davy was not communicating legal strategies or thought processes related to how to defendant against plaintiff's claim, and instead was sending along documents that are prepared in the ordinary course of business. *See Binks*

13

*Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118-1120 (7th Cir. 1983) (citations omitted). Plaintiff does not dispute that Davy not only filed the notice of claim but also identified information and document that the attorneys had prepared in anticipation of litigation. Nonetheless, without reviewing the email, I cannot conclude with certainty that the documents conveyed any attorney mental impressions. Therefore, I will direct defendant to turn over this email for my *in camera* review.

Defendant argues that the second communication -- the January 30, 2020, email from Schreiner to Davy and Haines (copying Thompson), that corrects a previous error -- need not be produced because Schreiner sent the email at Thompson's direction to get information. Thompson had been retained by Sentry to represent Anderson O'Brien, so Axley has an attorney-client relationship with both entities. Defendant represents in the privilege log that the email contained information related to Thompson's mental impressions related to plaintiff's case.

Plaintiff first argues that Schreiner is a legal assistant, not an attorney, but the attorney-client privilege applies with equal force to confidential communications by non-lawyers -- when made for the purpose of assisting the lawyers to provide legal advice -- as communications by lawyers. *United States v. Neuroscience, Inc.*, No. 14-mc-3-slc, 2015 WL 7731475, at *4 (W.D. Wis. Feb. 10, 2015); *Design Basics LLC v. Campbellsport Bldg. Supply Inc.*, No. 13-C-560, 2015 WL 5158676, at *2 (E.D. Wis. Sept. 2, 2015). In reply, plaintiff appears to have abandoned that argument and instead maintains that there is no way of knowing that defendant's representation is correct without the court's *in camera* review. However, I have no reason to infer that the privilege log contains a misrepresentation. As such, I see no basis to review this document nor to compel defendant to produce it.

The third communication is a February 2, 2020, email from Haines (Sentry's claims representative) to Schreiner (the Axley legal assistant) and Davy (a co-managing partner at Anderson O'Brien), copying Thompson, related to a potential settlement. Defendant's position is that this email is both privileged and protected by the work-product doctrine, for the same reasons outlined above, since Axley has an attorney-client relationship with both Sentry and Anderson O'Brien, and because the email contains Davy's mental impressions and assessment of the case. In reply, plaintiff again insists that I need to review these documents to confirm the content of the log. Again, seeing no basis to doubt defendant's representation about the content of the communication, I will not require defendant to produce it.

Fourth, defendant argues that the redacted portion of the January 30, 2020, email from Waits to Davy related to the communication from Thompson is privileged. Defendant states that Thompson sent Davy his impressions of the case, and that Davy shared Thompson's communication with other members of Anderson O'Brien's management and operations team (Flugaur and Waits), and *then* Waits followed up with Davy with an email regarding Thompson's communications. Defendant's position is that since Thompson's initial communication to Davy was privileged *and* intended for Anderson O'Brien's management and operations team, Davy's subsequent sharing of that email to Waits and Flugaur remained protected and did not constitute a waiver of the privilege. Plaintiff does not directly address this argument in reply, but again suggests that I cannot reach any conclusion about the content of the redacted material without reviewing it. Here, the trail of the communications is so convoluted that the best course of action is for me to review it to determine whether the redacted communication is privileged, so I will direct defendant to turn this email chain over for my review as well.

### C. Management meeting minutes

Finally, defendant lists two documents on its privilege log described as Management Meeting Minutes related to "office space," Bates numbered AO000051 and AO000055. Defendant's position is that these documents are irrelevant to this lawsuit and, regardless, contain confidential information.

Defendant represents that the Management Meeting Minutes do not include any information about "office space" that relates to the plaintiff or even the office in which he was located. That said, defendant is willing to disclose this portion of the Management Meeting Minutes, subject to the protective order that would keep this information confidential. Although plaintiff claims defendant never offered this as an option, he does not oppose it. Therefore, I will include these minutes in the documents to be kept confidential and I will deny plaintiff's request that I compel defendant to product it.

To summarize, I am denying plaintiff's motion to compel with respect to the January 30, 2020, email from Schreiner to Davy and Haines; the February 2, 2020, email, from Haines to Schreiner and Davy; and the Management Meeting Minutes. I am reserving on the motion with respect to the six emails involving Attorney Formella, the December 12, 2019, email from Davy to Fuss, and the January 30, 2020, email from Waits to Davy. After defendant submits these emails for my *in camera* review, I will determine whether they are privileged.

ORDER

IT IS ORDERED that:

(1) Plaintiff Frank Gaura's motion for protective order (dkt. 10) and motion to stay (dkt. 30) are DENIED. Not later than December 24, 2020, plaintiff must provide complete responses to defendant's Request for Production Nos. 1 and 2.

(2) Defendants' motion for protective order (dkt. 14) is GRANTED. It is ORDERED that the parties must keep confidential: (a) defendant's liability insurance policy; (b) defendant's timekeeping records; (c) defendant's Management Meeting Minutes, Bates numbered AO000051 and AO000055; and (c) all documents that relate to (i) the personnel records of plaintiff or other Anderson O'Brien employees, and (ii) plaintiff's medical and mental health records.

(3) Plaintiff's motion to compel (dkt. 21) is DENIED in part and RESERVED in part. Not later than December 8, 2020, defendant shall produce to the court for *in camera* review:

- The six email communications involving Attorney Formella;

- The December 12, 2019, email from Davy to Fuss (Bates numbered AO000009-AO000010); and

- The January 30, 2020, email from Waits to Davy (Bates numbered AO000014).

(4) The parties are responsible for their own fees and costs associated with this motion.

Entered this 25th day of November, 2020.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge